20-2474 from the District of Minnesota. Ascente Business Consulting v. DR myCommerce et al. All right, Mr. Jackson. May it please the court, Christopher Jackson on behalf of Appellant Ascente Business Consulting LLC. This is the case about the unfinished web portal. Ascente is challenging two sets of orders from the District Court. At the pleading stage, when the court denied Ascente's motion to amend, and at the summary judgment stage, when the court granted the appellee's motion. I'd like to jump right into the arguments at the pleading stage. The Thomp filed a motion to amend to add claims for fraud and for reckless misrepresentation, and we pled quite a bit of detail. The only question on appeal is whether there are enough allegations to infer that the appellees had the requisite intent. And under Rule of Civil Procedure 9b, intent may be alleged generally. That's because it's a very rare case where a party affirmatively admits that they're engaging in fraud. Fraud must almost always be inferred given the circumstances of the case. And to briefly touch on the fraudulent statements that we identified. The first statement took place on October 28th and 29th of 2014. That's when the appellees told Ascente right before the product was launched that the web portal was fully functional, that it was ready for commerce, and that it met all of the specifications in the SOWs. Now, Ascente alleges in its proposed complaint that the appellees recognized in the lead-up to the launch that they could not complete all of the work they needed to do on the portal. And so, the appellees made a conscious business decision not to complete some work that they themselves recognized was necessary for the portal. Based on these allegations, then of course the appellees knew that the statements about the web portal being fully functional and ready for commerce were false when they made them. As alleged in the proposed amended complaint, the appellees' own statements confirm the work wasn't done, but they said that the portal was ready to launch anyway. The second fraudulent statement took place on January 28th and 29th of 2015. That was when the parties met in Denver, Colorado, and the appellees promised Ascente that they would do additional development work on the web portal if they were given a payment of about $190,000. The statements that the appellees made internally amongst themselves, again as alleged in the The same day that the appellees made this promise to Ascente, their internal emails show again from the proposed amended complaint internally that quote Rodney Salazar will try to get us out of the contract with Ascente today. That confirms that the appellees intended not to do the work, to try to get out of the contract as quickly as they could. Then a few days after the appellees made this promise to Ascente, they circulated a summary of the meeting that they had with the company. In response to that summary of the meeting, again internally the appellees said looks like we can get rid of Ascente and congratulations. Now importantly, at the very same time, the very same time that the appellees internally are congratulating themselves about how they're going to get rid of the Ascente web portal, they are also sending an email to Ascente where they are talking about quote next steps moving forward with our partnership. The difference between what the appellee said internally and what they told Ascente could not be more stark. It was we are not going to do additional development work and then to Ascente it was we're moving forward. The last fraudulent act that Ascente identified took place on July 23rd 2015. That's when the appellees signed the software development agreement but had no present intention to perform the work that they had promised. And what allegations support this intent? Well before the appellee signed the agreement, as I said, they had admitted and talked internally about how they were going to get rid of Ascente, divest themselves of the portal, and divest themselves of the relationship. At the time the appellee signed the SDA, they knew that necessary work remained unfinished on the portal and that included the automated job, the insecure servers, phase two, the to-do items in the code, and the administrative interface. Specific technical details that we had identified. And then after the appellee signed the SDA, they didn't do any additional work. So despite the fact that they signed a contract that is titled software development agreement, they in fact did not develop any additional software. In this case, Ascente submits that the simplest explanation is the right one or at least a plausible inference to draw at the pleading stage. Digital River never intended to do the work that it promised to do and it had that intent all along. That briefly touches on the pleading stage. I'd like to move to the summary judgment stage and in particular to Ascente's breach of contract claim. The web portal did not meet the specifications laid out in the SDA's scope of services. And why do we know this? For a few reasons. To begin with, the only expert in the case, that is the only expert testimony that is available to the district court or to this court, has confirmed that the web portal did not meet the SDA's minimal specifications. In addition to that, the appellee's own internal emails confirm, they admit that repeatedly, that they did not complete work they knew was necessary on the portal and that their failure to complete this work caused customers problems throughout the life of the portal. And then of course, customers who tried to use the portal faced a litany of problems. They couldn't sign up, they couldn't update their credit cards, they couldn't get the information that Ascente promised as part of its business. And this got so bad that Ascente was forced to shut the entire business down. I'll go back to your reference to the expert testimony. I think there's an issue about whether that expert was testifying as to a legal issue that was proper. Can you address that? Yes, your honor. So to begin with, the district court, so this was brought up to the district court. The appellees filed a Dow Brown motion and they tried to exclude Mr. Hockman. The district court denied that motion in its entirety. In fact, at oral argument, the district court was very clear and said, I don't think that there's much merit to this argument. So she denied it. The appellees did not challenge that argument and they haven't raised this on appeal either. So I do think that it's not a matter that's before this court. It's not anything that this court could address. On remand, the district court may, if the case goes to trial, sustain certain objections that are made at trial. But the expert's testimony has been admitted and I think that it's part of the record. But in addition to that, I would say that expert testimony is necessary for, I guess, a couple of reasons. So the expert did make a number of conclusions and I suppose you can argue that some of them are about the ultimate issue of fact. But as the authorities that we cite in our brief, both in this court and below, that isn't a reason to exclude an expert's testimony. Experts can testify as to ultimate issues of fact and their testimony can still be admitted. But the second point I would make too is that I think in this case, expert testimony is necessary to understand what the terms of the SDA mean. You'll note that the appellees did not make use of a dictionary definition when they talked about terms like web portal or shuffleboard event or blue hornet or anything like that. And that's because these terms can't really have any meaning outside of industry standards and industry norms. And expert testimony is, I think, the primary way that we would rely or that we would get that information. And so what I would say in summary judgment is that the court must make all inferences in a son's favor and when a court is faced with unrebutted expert testimony, and I highlight the fact that the court, that the other side did not submit any experts of their own. So the court faced with unrebutted expert testimony that is also supported by primary evidence in the form of deposition testimony and other documents. But that at least gives rise to a question of material fact about whether the web portal met all of the technical specifications in the process. Council have a question in looking at the software development agreement. Um it has uh beginning in section eight it has a has a about a half a page of disclaimers and statements that the work product is provided as is. Um what does that do to a breach of contract claim? So it doesn't do anything your honor. The court is asking specifically about uh that it's provided as is. That language is very specific to the warranty. Um I have the contract but I'm not sure I can quite find the language. But in the specific sentence it actually talks about the warranty. So it lays out the scope of what exactly this warranty is. Councilman, this is this is Judge Smith. We're getting some feedback from your microphone. I don't know if something in your environment changed or if there's a uh what may be going on. But uh try it again after muting it. Maybe maybe it'll clear up. Is that better your honor? Uh no it still sounds like you're a robot. I apologize. Um I can sign out and sign back in. Is that an option? I apologize. Uh yes you've uh yes. Why why don't we do it this way? We'll go ahead and hear the other side. You can sign out uh uh well actually you need to hear him too. So uh uh yes let's do that. Sign out, sign back in, and then uh pick up where you left off. I apologize your honor. So and is uh can the court hear me now a little better? Yes definitely. Again I apologize. Um I believe that Judge Shepard was asking about the uh section 8 which deals with the representations and warranties. So that language is very specific to the warranty. What it says is it lays out the scope of the specific warranty that the parties um that the Digital River is essentially giving to Assand. And then it lays out the remedies that are available under that warranty. And again the language is very clear. It only applies to the warranty. I would say too that it wouldn't make sense for this contract to allow the warranty to essentially exculpate the appellees out of separate statement of work. And that statement of work requires the appellees to do things. If contracts have to be read together, all terms together, and taken as a whole, then you can't have one part of the contract that says the appellees literally don't have to do anything with the web portal. That there's uh no sort of satisfactory satisfying of the terms at all. But then have a separate position that says yes in fact we will build a web portal that is laid out in greater detail. Well I thought I thought part of the breach of contract claim was that the contract was breached because the product didn't didn't work. So yes and no your honor. It didn't work but not just that in general it kind of didn't work in the way that it should have. I want to focus the court's attention on the seven or eight technical issues that it was the specific problems that both Assant and customers had. But my point is that the language says except for express warranties set forth in section eight all software services and work product are provided as is. Yes and your honor I believe with that uh if I can find the language that is it's talking specifically about the warranty. So it isn't saying that um that the other provisions of the contract can't be breached. If that argument were correct then there would be no way for the appellees to breach the contract. I think at that point you'd essentially have an illusory agreement because you'd have a scope of services where they're saying yes we're going to create a web portal and it's going to do the particular things described in the scope of yes you're on the language and I think that it needs to be interpreted consistent with the scope of services. So the scope of services says they're going to create a web portal with certain elements to it but then they're saying another provision there's essentially two ways to interpret this other provision. It could be specific to the warranty or it could cover the entire contract. If it covers the entire contract as the appellees suggest then the scope of services doesn't have any meaning. It means that the appellees could do you know something as simple as you know writing on a piece of paper web portal and saying look we've delivered something we're calling the web portal and that you know you can't complain that it's not of the the appropriate level of quality or meeting the minimum specifications and so there can be no breach. The other thing I would say too is that a warranty and a breach of contract are two separate claims and so even if a party uh breach of warranty that's separate from a claim for breach of contract. They're subject to two different areas of law um and again section 8 only talks about the breach of warranty. Um I so I'd like to quickly turn to the fraudulent inducement claim which also is it. Counselor you're within your rebuttal time you can continue if you like or you can reserve. I'll reserve thank you your honor I'll reserve the remainder of my time. Ms. Fitzsimmons. Thank you your honor. Good morning your honors. Good morning counsel. May it please the court. My name is Danielle Fitzsimmons and I represent the appellees in this case. I'll jump right into the motion to amend. So I want to start off by noting for the court that this motion to amend has already been denied by two judges. Both Judge Menendez and Judge Erickson held that Asante did not properly plead claims for fraud and reckless misrepresentation. We have argued these proposed amendments on the futility standard arguing that they failed to state a claim upon which relief can be granted and because they are looking at fraud and reckless misrepresentation the heightened pleading standard and rule 9b applies. They had to plead fraud with particularity and they failed to do so. The allegations must be plausible not just conceivable. So as my opposing counsel noted there are three alleged misrepresentations. The first one from October of 2014 is where two Digital River employees Chad Johnson and Corey Hussfeld allegedly said that the portal was ready for commerce and was ready for launch. Judge Menendez and Judge Erickson both held that that fraud claim failed because there is absolutely no factual support in the proposed amended complaint to say that those two individuals knew their statements were false at the time that they said them. Counsel let me ask you a question about that. Is it your position that when an agent of a company makes an allegedly false statement that it had to have been known that it was false by those specific agents or by the company in individuals? Yes that's right your honor. So first of all in regards to this agency argument it was not made to the district court so we would first argue that it has been waived. Neither Judge Menendez nor Judge Erickson got to analyze this so we can't assign error to their orders. But also yes I'm saying that the speakers the individuals had to know that their statements were false at the time that they were made. That is consistent with rule 9b's heightened pleading standard. I think 9b case law has been clear that when you identify the who you can't just identify Digital River. You have to identify the individual and now if we start imputing one employee's knowledge onto the other we can't say that Corey Hussfeld and Chad Johnson knew at the time that made those statements that they were false. And it's not just an issue of different speakers it's also an issue of timing. These statements were allegedly made in October of 2014 and they're pointing to emails that were authored in January and March of 2015. So there's again nothing to show a present intent by the two speakers that they knew that their statements were false at time they were made. And finally to your honors agency point they have yet to cite a single fraud case. All the agency cases that they are relying on just recognize general agency principles. This argument has never once been recognized in a fraud case and we couldn't find any case law doing so throughout the entire country. The second fraud claim is regarding a statement made in January of 2015. This is at the Denver meeting and Assant says that Digital River stated at that time that it would complete unfinished work on the portal but they say we never had an intent to do so. I think it's important to note how Assant has characterized their own fraud claim. They call it a campaign of fraud, a fog of fraud, and they have admitted that it's difficult to pinpoint the argument on this. Judge Menendez said that they articulated a very broad and nebulous theory of fraud that their references to emails were taken out of context and they were trying to allege a two and a half year campaign of fraud. For this claim to prevail they have to show that at the time the statements were made Digital River had no intent to perform and when you look at the specific emails that are at issue you cannot reasonably draw those inferences. For example one employee says I wish I could get rid of Assant. As Judge Menendez noticed that is just an employee expressing frustration with a difficult project. Another email that they point to one employee says that Ronnie Salazar will try to get out of the Assant contract today. Well the fact of the matter is is that the parties were meeting in Denver to renegotiate their dealings with one another. So they went to the to the Denver meeting not knowing if their relationship would continue but they ended up finding a mutually beneficial agreement and their relationship did continue. So as Judge Menendez and Judge Erickson held there's absolutely no evidence that at the time that those January statements were made there was no intention to perform. Unless your honors have questions regarding the third and final fraudulent statement I won't address that. It's simply executing a contract which I am unaware of any case law saying that fraud is committed when you sign a contract. Turning now to the breach of contract claim as my opposing counsel noted this was on a motion for summary judgment that was granted in Digital River's favor. I think it's important to note that Assant concedes that the court largely followed its factual allegations. I want to start with the terms of the software development agreement because I think it's telling that my opposing counsel has not quoted a single provision from the software development agreement or any statement of work that they believe has been breached here. The software development agreement is the only agreement that is at issue. The court has noted that repeatedly and Assant admits that. This agreement required Digital River to transfer the portal source code to Assant in exchange for a payment. The software development agreement is very specific on the things that it does not cover. As your honor already noted in paragraph eight it provides that the software is being provided as is. The agreement disclaims basically all warranties. It says that it disclaimed any warranty that the software would meet Assant's requirements, that it would operate without interruption, that it would achieve any intended result or be secure, accurate, complete, free of harmful error or free of harmful code or error free. There was one remaining warranty in the software development agreement and that is where Digital River promised that the services would be performed in a professional and workmanlike manner and consistent with industry standards. The important part of that warranty is that if it is breached, they had to give notice of that alleged breach and an opportunity to cure. And Judge Erickson has already held that no notice occurred and Assant has never argued that they provided notice under that provision. And then after Digital River supplied the source code to Assant and no further obligations. The agreement is very clear that Digital River had no obligation to modify, fix, correct, update, enhance or otherwise maintain the software. Assant has alleged six breaches of the software development agreement. Judge Erickson thoroughly looked at the record and found no breaches here. I think it's important to note that their entire breach theory relies on the expert testimony of Jonathan Hockman. Judge Erickson did hold that Mr. Hockman is qualified to testify about development of e-commerce software. She never said that he gets to add new terms into the contract, which is exactly what they are trying to do here. Jonathan Hockman's entire analysis either adds new terms into the software development agreement or he speaks to industry standards. But again, industry standards are directly addressed in the contract at paragraph eight and Assant has admitted and Judge Erickson held that there was no notice under that provision. My opposing counsel has argued that Mr. Hockman's testimony is unrebutted. It's true that we don't have an expert here. That's because Digital River's and they can rebut his testimony. His testimony is also rebutted by the software development agreement terms and the statement of work 2.0 and it is rebutted by the documents and evidence at this case. When Mr. Hockman attempts to either add terms to software development agreement or speak in regards to industry standards, that argument flies in the face of the software development agreement. We had two sophisticated parties negotiating at arm's length and they were addressing a custom deal. There is an integration clause in the software development agreement. Therefore, Mr. Hockman cannot come in and add new provisions to that agreement. The software development agreement incorporates statement of work 2.0 but that provides that outside of the task listed will be considered out of scope. Therefore, again, he cannot come in and add new provisions. Unless your honors have any questions, I don't have anything further to say on the breach issue but in regards to the statute of limitations, Judge Erickson held that because there was no breach, she did not reach the defendant's defenses but this claim is clearly barred by the applicable statute of limitations. The software development agreement provides that the parties agree that any claims for breach of the agreement shall be brought by a party within two years of the date that that party first learns of a breach. So the operative time is when Assant first learned of a breach, not when it last learned of a breach. This case was commenced in January of 2018. Therefore, the statute of limitations began to run in January of 2016. Here, Assant's own witnesses, Brett Bussey and Travis Mills, both testified that they knew that the portal wasn't functioning at least by December of 2015. Brett Bussey testified by December of 2015, there were issues with the portal and it was not functioning as it should and Travis Mills testified that he knew at that point, December of 2015, that he didn't have a working portal and things weren't right. He testified that at that time, the portal was, quote, dead in the water and he testified that he had it turned off. Assant does not need to know why the portal wasn't functioning in order for the statute of limitations to start to run. They just need to know that it wasn't working and according to their own testimony, they knew that by December of 2015 and therefore their claim is time barred. In regards to the fraudulent inducement claim, Judge Erickson held that there were no issues of fact as to whether, or sorry, there was no issue of fact as to whether the, or whether Assant relied on the allegedly false statements when they entered into the contract. Travis Mills testified that he would have paid anything and opposing counsel has also admitted that they would have signed the software development agreement at the lower price. So there is absolutely no question of fact here that they would have signed the software development agreement even at the lower price it was provided because there was no detrimental reliance that fraudulent inducement claim fails as a matter of law. Unless your honors have any questions, that's all I have. All right, I don't see any. Thank you, Ms. Fitzsimmons. Mr. Jackson, your rebuttal. Thank you, your honor. To briefly touch on Judge Shepard's question. So in the joint appendix, page 44, it references the representations and warranty. This is a software development agreement. What the contract says is that all third-party materials are provided as is. And I think that's a very important distinction because the web portal was not a third-party material. Third-party materials include, there were pieces that were plugged into the web portal. So Blue Hornet, Shuffleboard, CS Identity. Those were the third-party materials. There's nothing that suggests that the web portal itself was developed as is. What I'd like to do is talk about the stated that we haven't identified a single term of the SD that was breached. And I would say, first of all, that's not correct. That if you look at pages 43 to 47 of our opening brief, we do identify the specific contractual terms for each technical issue. But I think the broader point, the thrust of our case is largely missed by this argument. That our point is that the web portal set out a minimal level of standards, a minimal level of quality, and a minimal level of functionality. That's what the expert Jonathan Hockman testified to. So what he said is that if you're going to develop a consumer-facing web portal that supports an identity monitoring subscription service, there are some basic things that it needs to do. You need to, for example, build servers. Now the Pellies admit that they did need to build a server, but they say that, for example, the servers didn't need to be secure or stable. And our point is that if you're going agree to do things like build a server, that imposes certain minimal level of qualifications per industry standards. I would also point out that the Pellies did not identify any of their witnesses as experts. That means that there is only one expert in this case. It's Jonathan Hockman, and his testimony has been admitted and is not rebutted. Since I see my time is running out, the district court erred when it denied Ahsan's motion to amend, and it erred again when it granted summary judgment. We would ask this court to reverse. Thank you, Mr. Jackson. Thank you also, Ms. Fitzsimmons. We appreciate both counsel's presentations to the court this morning. We will take the case under advisement, render decision in due course. Thank you. Counsel may be excused.